IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation, and SPIN MASTER TOYS UK LIMITED, a United Kingdom corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 24-cv-03532<br><br>**Judge Lindsay C. Jenkins**<br><br>**Magistrate Judge Heather K. McShain** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'** ***EX PARTE*** **MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited (collectively, "Spin Master" or "Plaintiffs") submit this Memorandum in support of their *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. Spin Master's Trademarks and Products ................................................... 2

    B. Defendants' Unlawful Activities .................................................................. 3

III. ARGUMENT ................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 6

    B. Spin Master Will Likely Succeed on the Merits ...................................... 6

    C. There Is No Adequate Remedy at Law, and Spin Master Will Suffer Irreparable Harm in the Absence of Preliminary Relief ............................................. 8

    D. The Balancing of Harms Tips in Spin Master's Favor, and the Public Interest Is Served by Entry of the Injunction ................................................................. 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .......................................... 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the RUBIK'S Trademarks Is Appropriate ... 11

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate .............................. 11

    C. Spin Master Is Entitled to Expedited Discovery .................................................. 13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......................................... 13

VI. CONCLUSION ................................................................................................................ 14

**MEMORANDUM OF LAW**

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

    Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited (collectively, "Spin Master" or "Plaintiffs") are requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, and false designation of origin against the defendants identified on Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Spin Master's Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Spin Master's federally registered Rubik's trademarks (the "Counterfeit Products") through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

    Defendants run a sophisticated counterfeiting operation and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants' counterfeiting of the registered Rubik's trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Spin Master respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

---

[1] The e-commerce store URLs are listed on Schedule A to the Complaint under the Online Marketplaces.

## II. STATEMENT OF FACTS

### A. Spin Master's Trademarks and Products

Spin Master is a leading global children's entertainment company that creates, designs, manufactures, and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. *See* Declaration of Susanne Teixeira (the "Teixeira Declaration") at ¶ 5. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. *Id.* Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. *Id.* Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products. *Id.*

One of the most popular Spin Master brands is Rubik's, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3, Rubik's Cube 4x4, and Rubik's Cube 5x5 (the "Rubik's Products"). *Id.* at ¶ 6. On January 4, 2021, Spin Master acquired Rubik's Brand Ltd., the previous holder of the rights to the Rubik's trademarks. *Id.* at ¶ 7. Through this acquisition, Spin Master has gained significant common law trademark and other rights in its Rubik's trademarks and Rubik's Products through its predecessor's use, advertising, and promotion. *Id.*

Rubik's sales have generated millions of dollars in revenue for Spin Master. *Id.* at ¶ 8. Rubik's has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design. *Id.* Among the purchasing public, genuine Rubik's Products are instantly recognizable as such. *Id.* The Rubik's brand has been a global success that resonates

2

with children and adults worldwide, making Rubik's one of the most recognizable puzzles around the world. *Id.*

The Rubik's trademark was first used in 1980 and products have continuously been sold under the Rubik's trademark and other trademarks (collectively, the "RUBIK'S Trademarks"). *Id.* at ¶ 9. As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S Trademarks. *Id.* The RUBIK'S Trademarks are famous marks and valuable assets of Spin Master. *Id.*

The RUBIK'S Trademarks are registered with the United States Patent and Trademark office. *Id.* at ¶ 10. The U.S. registrations for the RUBIK'S Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 11. The RUBIK'S Trademarks are distinctive when applied to Rubik's Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. *Id.* at ¶ 12. Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the RUBIK'S Trademarks are manufactured to the highest quality standards. *Id.* The RUBIK'S Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. *Id.* at ¶ 13. The innovative marketing and product designs of the Rubik's Products have enabled the Rubik's brand to achieve widespread recognition and fame. *Id.* The widespread fame, outstanding reputation, and significant goodwill associated with the Rubik's brand have made the RUBIK'S Trademarks valuable assets of Spin Master. *Id.*

### B. Defendants' Unlawful Activities

The success of the Rubik's brand has resulted in significant counterfeiting of the RUBIK'S Trademarks. Teixeira Declaration at ¶ 17. Consequently, Spin Master has a worldwide anti-

counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Spin Master has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Products to consumers in this Judicial District and throughout the United States. *Id.*

Spin Master's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants are interrelated. Teixeira Declaration at ¶¶ 17-27. If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Spin Master's reputation and the goodwill symbolized by the RUBIK'S Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the RUBIK'S Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 5-

4

11. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Spin Master respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois. *See* Complaint [1] at ¶¶ 2, 25, 33-34; *NBA Properties, Inc. v. HANWJH,* 46 F.4th 614, 624-627 (7th Cir. 2022); s*ee, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

**A. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g.*, *Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

**B. Spin Master Will Likely Succeed on the Merits**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements.

6

See 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc.* v. *551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the RUBIK'S Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Teixeira Declaration at ¶¶ 10–12. The registrations for the RUBIK'S Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 11. The registrations for the RUBIK'S Trademarks constitute *prima facie* evidence of their validity and of Spin Master's exclusive right to use the RUBIK'S Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Spin Master has not licensed or authorized Defendants to use any of the RUBIK'S Trademarks, and none of the Defendants are authorized retailers of Rubik's Products. *Id.* at ¶¶ 18, 20. Thus, Spin Master satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the RUBIK'S Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923,

7

929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Spin Master has submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to genuine Rubik's Products and use infringing and counterfeit marks identical to the RUBIK'S Trademarks. Both Spin Master and Defendants advertise their products to consumers via the Internet, targeting consumers searching for genuine Rubik's Products. Teixeira Declaration at ¶¶ 16-21, 24, 27. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Rubik's Products from Counterfeit Products. *Id.* at ¶¶ 20-21. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Rubik's Products to purchase Counterfeit Products instead. In that regard, Defendants advertise Counterfeit Products using the RUBIK'S Trademarks. *Id.* at ¶¶ 17-21, 24, 27. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Rubik's Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Spin Master is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

### C. There Is No Adequate Remedy at Law, and Spin Master Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Because Spin Master has shown a likelihood of success on the merits, Spin Master is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Moreover, the Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural*

8

*Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the RUBIK'S Trademarks has and continues to irreparably harm Spin Master through diminished goodwill and brand confidence, damage to Spin Master's reputation, loss of exclusivity, and loss of future sales. Teixeira Declaration at ¶¶ 28-32. The extent of the harm to Spin Master's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Spin Master will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Teixeira Declaration at ¶ 33.

### D. The Balancing of Harms Tips in Spin Master's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Spin Master has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if

9

preliminary relief is granted, balancing such harm against the irreparable harm Spin Master will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Spin Master has demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Spin Master's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Spin Master's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Spin Master seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

**IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the RUBIK'S Trademarks Is Appropriate

Spin Master requests a temporary injunction requiring the Defendants to immediately cease all use of the RUBIK'S Trademarks or substantially similar marks on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the RUBIK'S Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the RUBIK'S Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Spin Master is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Counterfeit Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Spin Master requests an *ex parte* restraint of Defendants' assets so that Spin Master's right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired.[2] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Spin Master meaningless.

---

[2] Spin Master has filed a Motion for Leave to File Under Seal certain documents for this same reason.

11

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Spin Master has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Spin Master is entitled, "subject to the principles of equity, to recover ... defendant's profits." Spin Master's Complaint seeks, among other relief, that Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Spin Master's request for a prejudgment asset freeze to preserve relief sought by Spin Master.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (*citing Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Spin Master has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

12

### C. Spin Master Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id*. (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Spin Master respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Spin Master's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. See, e.g., *Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Spin Master's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Spin Master respectfully requests that expedited discovery be granted.

### V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Spin Master's evidence of counterfeiting, trademark infringement, and false designation of origin, Spin Master respectfully requests this Court require Spin Master to post a bond of no more than ten thousand U.S. dollars ($10,000.00).

*See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

### VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Spin Master's business, its famous Rubik's brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Products have been manufactured by or emanate from Spin Master, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Spin Master respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 3rd day of May 2024.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master Toys UK Limited*