IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation, and SPIN MASTER TOYS UK LIMITED, a United Kingdom corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 24-cv-03532<br><br>**Judge Lindsay C. Jenkins**<br><br>**Magistrate Judge Heather K. McShain** |

**Declaration of Susanne Teixeira**

# DECLARATION OF SUSANNE TEIXEIRA

I, Susanne Teixeira, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Vice President of Legal Affairs & Intellectual Property for Spin Master Ltd. ("Spin Master Ltd." and "Spin Master Toys UK Limited" are collectively referred to herein as "Spin Master" or "Plaintiff"). I am knowledgeable of or have access to business records concerning all information referenced herein including, but not limited to, Spin Master's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, and media coverage. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

4. Plaintiff Spin Master Toys UK Limited is a United Kingdom corporation with an address of Secure Trust House Boston Drive, Bourne End Buckinghamshire United Kingdom.

5. Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment

properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products.

6. One of the most popular Spin Master brands is Rubik's, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3, Rubik's Cube 4x4, and Rubik's Cube 5x5 (the "Rubik's Products").

7. On January 4, 2021, Spin Master acquired Rubik's Brand Ltd., the previous holder of the rights to the Rubik's trademarks. Through this acquisition, Spin Master has gained significant common law trademark and other rights in its Rubik's trademarks and Rubik's Products through its predecessors' use, advertising, and promotion.

8. Rubik's sales have generated millions of dollars in revenue for Spin Master. Rubik's has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design. Among the purchasing public, genuine Rubik's Products are instantly recognizable as such. The Rubik's brand has been a global success that resonates with children and adults worldwide, making Rubik's one of the most recognizable puzzles around the world.

9. The Rubik's trademark was first used in 1980 and products have continuously been sold under the Rubik's trademark and other trademarks (collectively, the "RUBIK'S Trademarks"). As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S Trademarks. The RUBIK'S Trademarks are famous marks and valuable assets of Spin Master.

10. The RUBIK'S Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
|---|---|
| 1,242,974 | RUBIK'S CUBE |
| 1,265,094 | |
| 7,033,371 | RUBIK'S |

11. The above U.S. registrations for the RUBIK'S Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed RUBIK'S Trademarks are attached hereto as **Exhibit 1**.

12. The RUBIK'S Trademarks are distinctive when applied to Rubik's Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the RUBIK'S Trademarks are manufactured to the highest quality standards.

13. The RUBIK'S Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Rubik's Products have enabled the Rubik's brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation,

and significant goodwill associated with the Rubik's brand have made the RUBIK'S Trademarks valuable assets of Spin Master.

14. Spin Master has expended substantial time, money, and other resources in advertising and promoting the RUBIK'S Trademarks. In fact, Spin Master has expended millions of dollars in advertising, promoting, and marketing featuring the RUBIK'S Trademarks. Rubik's Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the RUBIK'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master. Rubik's Products have become among the most popular of their kind in the U.S. and the world. The RUBIK'S Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the RUBIK'S Trademarks is of incalculable and inestimable value to Spin Master.

15. Genuine Rubik's Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Rubik's brand.

16. Rubik's Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, and through the rubiks.com webstore. Sales of Rubik's Products via the rubiks.com webstore are significant. The rubiks.com webstore features proprietary content, images, and designs exclusive to Spin Master.

17. The success of the Rubik's brand has resulted in significant counterfeiting of the RUBIK'S Trademarks. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps

and reported by consumers. In recent years, Spin Master has identified numerous fully interactive e-commerce stores, including those operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of the RUBIK'S Trademarks (the "Counterfeit Products") to consumers in this Judicial District and throughout the United States.

18. I perform, supervise, and/or direct investigations related to Internet-based infringement of the RUBIK'S Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Products were offered for sale, other features commonly associated with e-commerce stores selling Counterfeit Products, and because Defendants and their e-commerce stores do not conduct business with Spin Master and do not have the right or authority to use the RUBIK'S Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 2**.

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars

and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Spin Master has not licensed or authorized Defendants to use any of the RUBIK'S Trademarks, and none of the Defendants are authorized retailers of Rubik's Products.

21. Many Defendants also deceive unknowing consumers by using the RUBIK'S Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rubik's Products. Other e-commerce stores operating under the Seller Aliases omit using the RUBIK'S Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rubik's Products.

22. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms. On information and belief, certain Defendants have

anonymously registered and maintained Seller Aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

23. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

25. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master.

27. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Spin Master, have jointly and severally, knowingly and willfully used and continue to use the RUBIK'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

28. Monetary damages cannot adequately compensate Spin Master for ongoing infringement because monetary damages fail to address the loss of control of and damage to Spin Master's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Spin Master's reputation and goodwill by acts of infringement.

29. Spin Master's goodwill and reputation are irreparably damaged when the RUBIK'S Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Spin Master. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm

to Spin Master's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

30. Spin Master is further irreparably harmed by the unauthorized use of the RUBIK'S Trademarks because counterfeiters take away Spin Master's ability to control the nature and quality of the Counterfeit Products. Loss of quality control over goods offered for sale or sold under the RUBIK'S Trademarks and, in turn, loss of control over Spin Master's reputation, is neither calculable nor precisely compensable.

31. The use of the RUBIK'S Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Spin Master is likely causing and will continue to cause consumer confusion, which weakens Spin Master's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Products they have purchased originated from Spin Master will come to believe that Spin Master offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Rubik's Products, resulting in a loss or undermining of Spin Master's reputation and goodwill. Indeed, there is damage to Spin Master's reputation and goodwill even if consumers know that the goods they are purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Spin Master and the RUBIK'S Trademarks. Such post-sale confusion results in damage to Spin Master's reputation and correlates to a loss of unquantifiable future sales.

32. Spin Master is further irreparably damaged due to a loss of exclusivity. Rubik's Products are meant to be exclusive. Spin Master's extensive marketing efforts and innovative

designs are aimed at growing and sustaining sales. The RUBIK'S Trademarks are distinctive and signify to consumers that the products originate from Spin Master and are manufactured to Spin Master's high-quality standards. When counterfeiters use the RUBIK'S Trademarks to offer for sale or sell goods without Spin Master's authorization, the exclusivity of Spin Master's products, as well as Spin Master's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

33. Spin Master will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 30th day of April 2024 at Toronto, Ontario, Canada.

DocuSigned by:

*Susanne Teixeira*
—06788FDD3294476...
Susanne Teixeira