# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SPIN MASTER LTD., et al., | **)** | |
| | **)** | |
| Plaintiff, | **)** | |
| | **)** | Case No. 24-CV-03532 |
| v. | **)** | |
| | **)** | Judge Lindsay C. Jenkins |
| THE PARTNERSHIPS AND | **)** | |
| UNINCORPORATED | **)** | |
| ASSOCIATIONS IDENTIFIED ON | **)** | |
| SCHEDULE A, | **)** | |
| | **)** | |
| Defendants. | | |

| | | |
|---|---|---|
| CAO COUNTY MINGRUI | **)** | |
| HANDICRAFT FACTORY., et al., | **)** | |
| Counter Plaintiffs, | **)** | |
| | **)** | |
| v. | **)** | |
| | **)** | |
| Spin Master Toys UK Limited, | **)** | |
| Counter-Defendant. | **)** | |

## DEFENDANTS' ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS AND JURY DEMAND

Defendant stores #4 Cao County Mingrui Handicraft Factory, #5 Changzhou Mermei Industry Co., Ltd., #8 Chengdu Andrey Trade Co., Ltd., #14 Dongguan Huan Lin Magnetic Industry Co., Ltd., #20 Guangzhou Huaya Biotechnology Co., Ltd., #43 Sichuan Lantu Culture Technology Co., Ltd., #45 Top Ace Development Limited, #46 Wenzhou Lvyuan Arts and Crafts Co., Ltd. (hereinafter "***Defendant Stores***") hereby answer the Complaint as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in

this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

**ANSWER: Admitted.**


2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Spin Master's federally registered trademarks to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

**ANSWER: With respect to themselves, Defendant Stores admit they operate e-commerce stores, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank**

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

**accounts but deny all other the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## II. INTRODUCTION

3.      This action has been filed by Spin Master to combat e-commerce store operators who trade upon Spin Master's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Spin Master's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Spin Master has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants'

actions and seeks injunctive and monetary relief.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### III.    THE PARTIES

**Plaintiffs**

4.      Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

5.      Plaintiff Spin Master Toys UK Limited is a United Kingdom corporation with an address of Secure Trust House Boston Drive, Bourne End Buckinghamshire United Kingdom.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

6.      Spin Master Corp. is the parent company of Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

7.     Spin Master is a leading global children's entertainment company that creates, designs, manufactures, and markets a diversified portfolio of innovative toys, games, products, and entertainment properties. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters, and content, but also monetize that content through the creation, sale, and licensing of products.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

8.     One of the most popular Spin Master brands is Rubik's, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3 as shown in Figure 1 below with packaging ("Rubik's Products").

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

*Figure 1*



9. On January 4, 2021, Spin Master Corp. acquired Rubik's Brand Ltd., the previous holder of the rights to the Rubik's trademarks. Through this acquisition, Spin Master Corp. and Plaintiffs have gained significant common law

trademark and other rights in its Rubik's trademarks and Rubik's Products through its predecessor's use, advertising, and promotion.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

10. Rubik's sales have generated millions of dollars in revenue for Spin Master. Rubik's has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design. Among the purchasing public, genuine Rubik's Products are instantly recognizable as such. The Rubik's brand has been a global success that resonates with children and adults worldwide, making Rubik's one of the most recognizable puzzles around the world.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

11. The Rubik's trademark was first used in 1980, and products have continuously been sold under the Rubik's trademark and other trademarks (collectively, the "RUBIK'S Trademarks"). As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S Trademarks. The RUBIK'S Trademarks are famous marks and valuable assets of Spin Master.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of this**

paragraph. **Defendant Stores deny the remaining allegations in this paragraph.**

12.    Spin Master Toys UK Limited is the lawful assignee and exclusive owner of the RUBIK'S Trademarks. Spin Master Ltd. is responsible for the enforcement of intellectual property rights that are controlled and/or owned by Spin Master Corp. and its subsidiaries, including the RUBIK'S Trademarks.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

13.    The RUBIK'S Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
| --- | --- |
| 1,242,974 | RUBIK'S CUBE |
| 1,265,094 |  |
| 7,033,371 | RUBIK'S |

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

8

14. As indicated on its United States Registration Certificate, U.S. Trademark Reg. No. 1,265,094 (pictured in the chart above) covers "three dimensional puzzles" and is described as a "black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow, and orange."

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

15. The above U.S. registrations for the RUBIK'S Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the RUBIK'S Trademarks are conclusive evidence of the validity of the RUBIK'S Trademarks and of the registrations of the RUBIK'S Trademarks, of Spin Master Toys UK Limited's ownership of the RUBIK'S Trademarks, and of Spin Master's exclusive right to use the RUBIK'S Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies of the United States Registration Certificates for the above- listed RUBIK'S Trademarks are attached hereto as **Exhibit 1**.

**ANSWER: Defendant Stores deny that the RUBIK'S Trademarks are valid but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

16. The RUBIK'S Trademarks are distinctive when applied to Rubik's

Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the RUBIK'S Trademarks are manufactured to the highest quality standards.

**ANSWER: Defendant Stores deny the allegations in the first sentence of this paragraph but lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

17.     The RUBIK'S Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Rubik's Products have enabled the Rubik's brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the Rubik's brand have made the RUBIK'S Trademarks valuable assets of Spin Master.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18.     Spin Master has expended substantial time, money, and other resources in advertising and promoting the RUBIK'S Trademarks. In fact, Spin Master has expended millions of dollars in advertising, promoting, and marketing featuring the RUBIK'S Trademarks. Rubik's Products have also been the subject

of extensive unsolicited publicity resulting from their high- quality, innovative designs. As a result, products bearing the RUBIK'S Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high- quality products sourced from Spin Master. Rubik's Products have become among the most popular of their kind in the U.S. and the world. The RUBIK'S Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the RUBIK'S Trademarks is of incalculable and inestimable value to Spin Master.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

19. Genuine Rubik's Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Rubik's brand.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

20. Rubik's Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, and through the rubiks.com webstore. Sales of Rubik's Products via the rubiks.com webstore are significant. The rubiks.com webstore features proprietary

content, images, and designs exclusive to Spin Master.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

### The Defendants

21.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Spin Master.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

**ANSWER: The Defendant Stores admit that they are business entities who reside in People's Republic of China and that they own and operate e-commerce stores. The Defendant Stores deny any remaining allegations in this paragraph as to the Defendant Stores. With respect to the other defendants, the Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in the paragraph.**

22.     On information and belief, Defendants, either individually or jointly,

operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Spin Master to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph except to admit they operate ecommerce stores and are listed on Schedule A. With respect to other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## IV. DEFENDANTS' UNLAWFUL CONDUCT

23. The success of the Rubik's brand has resulted in significant counterfeiting of the RUBIK'S Trademarks. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Spin Master has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, DHgate, and Temu, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the

United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. Intellectual Property Rights Seizure Statistics, Fiscal Year 2021, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

24.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third- party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites

taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186- 187.

**ANSWER: Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

25.     Defendants have targeted sales to Illinois residents by setting up and operating e- commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

**ANSWER: The Defendant Stores admit that they operate online stores that are accessible in Illinois, offer shipping to the United States and accept payments in United States currency. The Defendant Stores deny any remaining allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Spin Master has not licensed or authorized Defendants to use any of the RUBIK'S Trademarks, and none of the Defendants are authorized retailers of Rubik's Products.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

27.     Many Defendants also deceive unknowing consumers by using the RUBIK'S Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rubik's Products.

Other e-commerce stores operating under the Seller Aliases omit using the RUBIK'S Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rubik's Products.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

28.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

29.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal

their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants,**

**Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31.    E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32.    Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

33. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Spin Master, have jointly and severally, knowingly and willfully used and continue to use the RUBIK'S Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

34. Defendants' unauthorized use of the RUBIK'S Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

35.    Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendant Stores repeats their answers to the preceding paragraphs.**

36.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered RUBIK'S Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RUBIK'S Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Rubik's Products offered, sold, or marketed under the RUBIK'S Trademarks.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph, except they admit this is a trademark infringement action. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

37.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the RUBIK'S Trademarks without Spin Master's permission.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

38.     Spin Master Toys UK Limited is the exclusive owner of the RUBIK'S Trademarks. Spin Master Toys UK Limited's United States Registrations for the RUBIK'S Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Spin Master's rights in the RUBIK'S Trademarks and are willfully infringing and intentionally using counterfeit versions of the RUBIK'S Trademarks. Defendants' willful, intentional, and unauthorized use of the RUBIK'S Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a**

**belief about the truth of the allegations in this paragraph.**

39.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40.     Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the RUBIK'S Trademarks.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41.     The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants,**

**Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

42.     Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

**ANSWER: Defendant Stores repeats their answers to the preceding paragraphs.**

43.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Spin Master.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

44.     By using the RUBIK'S Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the

24

Counterfeit Products.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

45. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

46. Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the Rubik's brand.

**ANSWER: With respect to themselves, Defendant Stores deny the allegations in this paragraph. With respect to the other defendants, Defendant Stores lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

## FIRST AFFIRMATIVE DEFENSE - GENERICNESS

1. The trademarks cited by Plaintiffs, including but not limited to "Rubik's" and "Rubik's Cube" have become generic terms in the minds of the public. These terms are now commonly understood to refer to the type of puzzle products that consist of a cube with colored patches on each face, rather than indicating a specific source or brand.

2. The public perceives "Rubik's" and "Rubik's Cube" as the generic names for three-dimensional combination puzzles. As such, these terms no longer serve (if they ever did serve) the primary function of a trademark, which is to identify and distinguish the source of the goods.

3. The terms "Rubik's" and "Rubik's Cube" are widely used in a generic sense by consumers, the media, and in commerce to describe a category of puzzle products, without any reference to a specific manufacturer or origin. This widespread use has contributed to the generic nature of the terms.

4. No matter the extent to which Plaintiffs attempt to police and enforce the trademarks, there is no other name for a Rubik's Cube.

5. Under 15 U.S.C. § 1064(3), a trademark that has become the generic name for the goods or services for which it is registered is subject to cancellation. Defendant Stores assert that the trademarks in question should be deemed generic and invalidated accordingly.

6. As a result of the generic nature of the trademarks, Defendant Stores' use of the terms "Rubik's" and "Rubik's Cube" in connection with their products does not constitute trademark infringement or counterfeiting. Defendant Stores are merely using generic terms to describe the type of puzzle products they offer or to describe the appearance of their products, which is permissible under trademark law.

7. The generic nature of the marks undermines all counts of the Complaint with respect to those marks.

WHEREFORE, Defendant Stores respectfully request that the Court recognize the generic nature of the "Rubiks'" trademarks mentioned or incorporated by reference into the complaint and dismiss Plaintiffs' complaint with prejudice.

### SECOND AFFIRMATIVE DEFENSE – FUNCTIONALITY

1. The design mark with registration No. 1,265,094 with the following design:



Is functional and not entitled to trademark protection.

2. The picture is simply a drawing of a Rubik's Cube, a product which may be freely manufactured and sold by anyone.

3. A Rubik's Cube is a puzzle consisting of a cube with six faces, each initially covered by nine stickers of one of six solid colors, exactly as depicted in the mark.

4. Plaintiff's registration No. 1,265,094 consist solely of a picture of the functional aspects of a Rubik's Cube.

5. In order to make a Rubik's Cube, a manufacturer must by necessity develop a three dimensional product consisting of a cube consisting of six faces of smaller cubes in a 3x3 array, in the exact size and shape depicted in the 1,265,094 registration.

6. That mark, and any like it incorporated by reference into the complaint, is therefore functional, rendering invalid all counts of the complaint to the extent Defendant Stores are accused of infringing them.

WHEREFORE, Defendant Stores respectfully request that the Court recognize the functional nature of the trademarks mentioned or incorporated by reference into the complaint and dismiss Plaintiffs' complaint with prejudice.

**THIRD AFFIRMATIVE DEFENSE DESCRIPTIVE FAIR USE**

1. Defendant Stores' use of the terms "Rubik's" and "Rubik's Cube" constitutes descriptive fair use under the Lanham Act, 15 U.S.C. § 1115(b)(4). Defendants use these terms solely to describe the type and characteristics of their products which resemble a Rubik's Cube.

2. Defendant Stores' use of the terms "Rubik's" and "Rubik's Cube" is not intended to, nor does, function as a trademark. The use is purely descriptive,

referring to the common name of the type of puzzle product, and merely describes the products being sold.

3.  Defendant Stores have used the terms "Rubik's" and "Rubik's Cube" in good faith and not as a trademark. There is no intention to mislead consumers or to exploit any goodwill associated with Plaintiffs' trademarks. The use is solely to describe the products' characteristics accurately and there are no other reasonably available terms.

4.  Defendants' use of the terms "Rubik's" and "Rubik's Cube" is unlikely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of the products. The terms are used descriptively and are necessary to convey the nature of Defendants' products.

5.  The use of the terms "Rubik's" and "Rubik's Cube" is necessary to describe the products accurately to describe the type of puzzle products offered by Defendants without using the widely recognized descriptive terms.

6.  The descriptive nature of the Defendants Stores' use of "Rubik's" or "Rubiks Cube" undermines the rationale and factual basis of all counts in the Complaint.

7.  This Second Affirmative Defense is in the alternative to the First Affirmative Defense.

WHEREFORE, Defendants respectfully request that the Court recognize the descriptive fair use of the terms "Rubik's" and "Rubik's Cube" and dismiss Plaintiffs' complaint in its entirety with prejudice.

## COUNTER CLAIM I FOR CANCELLATION

The Defendant Stores Counterclaim against Plaintiff Spin Master Toys UK Limited for cancellation of the marks RUBIK'S CUBE, USPTO reg. No. 1,242,974, and RUBIK'S, Reg. No. 7,033,371 and any related marks incorporated by reference in the Complaint.

1. 1- 7 Defendant stores repeat and reallege the allegations in its First Affirmative Defense.

6. Pursuant to 15 U.S.C. § 1119, federal courts may cancel registration of a trademark when warranted or order the USPTO to do so.

7. RUBIK'S, Reg. No. 7,033,371, is not "incontestable", contrary to the allegations in the complaint.

8. While RUBIK'S CUBE, USPTO reg. No. 1,242,974, is "incontestable", that status does not leave it immune from cancellation where the mark has become generic.

9. Plaintiff's complaint refers to other unspecified marks which it accuses Defendant Stores of infringing. To the extent that those marks are related to the name "Rubik's Cube", those marks should likewise be cancelled.

10. The Rubik's Cube was invented by Erno Rubik in the mid 1970s, and was first patented in 1980 in Hungary, and later in the United States in 1983, Patent No. 4,378,116. The patent expired in 2000.

11. The Rubik's Cube is an ingeniously designed 3x3x3 puzzle. Since the expiration of the Patent almost 25 years ago, anyone has the right to manufacture and sell the invention.

12. The now 50 year old invention is internationally known to generations of puzzle enthusiasts. But the invention is not known to the purchasing public by any other name than "Rubik's Cube".

13. "Rubik's Cube" does not contain any source identifying significance, it is simply the one and only name for the Erno Rubik's invention which is now in the public domain.

14. Plaintiff is not entitled to monopolize the common name of the product, Rubik's Cube.

15. Pursuant to 15 USCS § 1064, Plaintiff's Rubik Cube marks, including RUBIK'S CUBE, USPTO reg. No. 1,242,974, and RUBIK'S, Reg. No. 7,033,371, and those incorporated by reference in the complaint should be cancelled as generic.

WHEREFORE, Defendant Stores respectfully request that this Court order the United States Patent and Trademark Office to cancel the trademarks RUBIK'S CUBE, USPTO reg. No. 1,242,974, and RUBIK'S, Reg. No. 7,033,371 and the other marks asserted by reference in the Complaint which are likewise generic.

## COUNTER CLAIM II FOR CANCELLATION

The Defendant Stores Counterclaim against Plaintiff Spin Master Toys UK Limited for cancellation of the design mark Reg. No. 1,265,094 and any related marks incorporated by reference in the Complaint.

1. 1- 6 Defendant Stores incorporate by reference their allegations in and those incorporated by reference in the complaint should be cancelled as generic.

7. Pursuant to 15 U.S.C. § 1119, federal courts may cancel registration of a trademark when warranted or order the USPTO to do so.

8. Although "incontestable", registration No. 1,265,094 is not immune from cancellation.

9. Pursuant to 15 USCS § 1064 (3) a registered mark may be cancelled at any time if it is functional.

10. A product feature, such as the cube array design on a Rubik's Cube, is functional and cannot serve as a trademark if the feature is essential to the use or purpose of the article, as it is in this case.

11. Pursuant to 15 USCS § 1064 (3), registration No. 1,265,094, and any similar registered trademark incorporated by reference in the complaint should be cancelled as functional.

WHEREFORE, Defendant Stores respectfully request that this Court order the United States Patent and Trademark Office to cancel the design trademark Reg. No. 1,265,094 as functional and the other marks asserted by reference in the Complaint which are likewise functional.

32

**JURY DEMAND**

**Defendant stores #4 Cao County Mingrui Handicraft Factory, #5 Changzhou Mermei Industry Co., Ltd., #8 Chengdu Andrey Trade Co., Ltd., #14 Dongguan Huan Lin Magnetic Industry Co., Ltd., #20 Guangzhou Huaya Biotechnology Co., Ltd., #43 Sichuan Lantu Culture Technology Co., Ltd., #45 Top Ace Development Limited, #46 Wenzhou Lvyuan Arts and Crafts Co., Ltd. hereby demand, for their defense to Plaintiff's claims and all of their affirmative defenses and counterclaims, trial by jury for on all issues triable by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.**

Date: June 27, 2024.                    Respectfully submitted,

Defendant stores #4 Cao County Mingrui Handicraft Factory, #5 Changzhou Mermei Industry Co., Ltd., #8 Chengdu Andrey Trade Co., Ltd., #14 Dongguan Huan Lin Magnetic Industry Co., Ltd., #20 Guangzhou Huaya Biotechnology Co., Ltd., #43 Sichuan Lantu Culture Technology Co., Ltd., #45 Top Ace Development Limited, #46 Wenzhou Lvyuan Arts and Crafts Co., Ltd.

By:/s/ Wesley Johnson
One of their attorneys

Wesley Johnson
Goodman Tovrov Hardy & Johnson LLC
105 W. Madison, Suite 1500
Chicago, IL 60602
(312) 752-4828
Fax: (312) 264-2535
wjohnson@goodtov.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that on July 2, 2024, I served a copy of the attached **Answer to Complaint**, on all parties who have appeared via ECF.

By: *<u>/s/ WESLEY E JOHNSON</u>*