UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 24-CV-03532 |
| v. ) | |
| ) | Judge Lindsay C. Jenkins |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ) | |
| ASSOCIATIONS IDENTIFIED ON ) | |
| SCHEDULE A, ) | |
| ) | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO DISSOLVE PRELIMINARY INJUNCTION**

In Support of their MOTION TO DISSOLVE PRELIMINARY INJUNCTION, Defendant stores #4 Cao County Mingrui Handicraft Factory, #5 Changzhou Mermei Industry Co., Ltd., #8 Chengdu Andrey Trade Co., Ltd., #14 Dongguan Huan Lin Magnetic Industry Co., Ltd., #20 Guangzhou Huaya Biotechnology Co., Ltd., #43 Sichuan Lantu Culture Technology Co., Ltd., #45 Top Ace Development Limited, #46 Wenzhou Lvyuan Arts and Crafts Co., Ltd. (hereinafter "***Defendant Stores***"), state as follows:

**INTRODUCTION**

Plaintiffs have no likelihood of success on the merits of its trademark infringement claim because Plaintiffs have offered no analysis as to why any of Defendant Stores' products infringe their trademarks, and, even if they did, the trademarks are functional, generic or were foreign registrations without the

requisite intent to use the marks in commerce in the United States. Plaintiffs have not shown in either the motion for a temporary restraining order, or motion for a preliminary injunction, that Defendant Stores have infringed Plaintiffs' trademarks. Accordingly, the preliminary injunction should be dissolved.

Plaintiffs brought the instant action alleging trademark infringement by some 104 defendants, Schedule A, DKT#2, including the Defendant Stores and moved *ex parte* for a temporary restraining order (the "**TRO**", Dkt. # 14-15) and a preliminary injunction (the "**PI**", Dkt ## 41, 42). The PI makes no new substantive arguments nor does it include any new testimony in support of an injunction, but simply relies on the evidence and arguments in the motion and supporting memorandum for the TRO: "By virtue of this Court's entry of the TRO, it has already found that the above requirements [i.e. the preliminary injunction standards] have been satisfied". DKT#42, pp. 3-4.

In addition, Plaintiff's failed to demonstrate that Plaintiffs would suffer irreparable harm and the balance of equities favor the Defendant Stores.

## **LEGAL STANDARD**

The party seeking a preliminary injunction bears the burden of demonstrating: (1) a likelihood of success on the merits of the case; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Long v. Bd. of Educ.*, 167 F. Supp. 2d 988 (N.D. Ill. 2001).

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Goodman v. Illinois Dept. of Financial and Professional Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (internal quotation marks and citation omitted). A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell*, 990 F.3d at 544 (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)). To succeed, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (citation omitted).

To prevail on trademark infringement or unfair competition, "a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001).

To establish counterfeiting, *see* 15 U.S.C. § 1114, "a plaintiff must establish four elements beyond mere infringement or false advertising" first, the mark must be "counterfeit," meaning "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127; *see also* 15 U.S.C. § 1116(d)(1)(B)(i). Second, the mark must be registered on the U.S. Patent and Trademark Office's principal register for use on the same goods or services for which the defendant uses the mark. *See id.* § 1116(d)(1)(B)(i). Third, the defendant must not have been authorized to use the mark at the time the goods or services

3

were manufactured or produced. *Id.* § 1116(d)(1)(B). Finally, the defendant must have acted with knowledge and intent. *See id.* § 1117(b). *Coach, Inc. v. Diva's House of Style & Elizabeth Bond*, No. 3:11-CV-253 JD, 2012 WL 6049722, at *8 (N.D. Ind. Dec. 5, 2012).

## ARGUMENT

I.  **Plaintiffs are Not Likely to Succeed on the Merits**

   A. **Plaintiff makes no attempt to demonstrate that Defendant Stores' products infringe, let alone that they are counterfeit.**

Plaintiffs cite three trademark registrations in their Complaint [DKT#1] and subsequent motions for a TRO and PI: Registration No. 1,242,974 for RUBIK'S CUBE (excluding CUBE); ("*'974*") for "Puzzle Games" Registration No. 7,033,371 for RUBIK'S ("*'371*"), for a wide variety of goods in 15 different classes, and Registration No. 1,265,094 ("*'094*"), for "three dimensional puzzles", a design mark consisting of "a black cube having nine color patches on each of its six faces with the color patches on each face being the same and consisting of the colors red, white, blue, green, yellow and orange". See DKT ##17, 17-1.

Plaintiffs claim that all three registrations are incontestable (Complaint ¶ 15), but that is not true. Plaintiff applied to register '371 in 2019 and obtained registration on April 25, 2023. As detailed below, there is no indication that Plaintiffs have ever used the '371 mark in commerce in the United States, let alone for the requisite five consecutive years required by 15 U.S.C. § 1065.

4

Plaintiffs' evidence that the Defendant Stores infringed those trademarks in support of the TRO (and hence the PI), consists entirely of the declaration of Susanne Teixeira, Plaintiff's Vice President of Legal Affairs & Intellectual Property, DKT#17, which attaches, under DKT#18, "True and correct copies of screenshot printouts showing the active e- commerce stores operating under the Seller Aliases reviewed" Teixeira declaration, DKT#17, ¶18. Exhibit 2, DKT#18, is 1446 pages of screenshots of allegedly infringing products for the 104 defendants.

Unlike some plaintiffs, Plaintiffs in this matter provide an index, which is helpful. But in the well over fifteen hundred pages of material they submitted in support of the TRO and PI, Plaintiffs do not offer any sort of analysis of its claims with respect to Defendant Stores or any of the defendants. Instead, as detailed below, Teixeira simply declares that she, or maybe someone else, looked at the screenshots and "determined" that the screenshots constitute counterfeiting, and on that basis alone the court should, apparently, find that the defendants must be counterfeiters.

That characterization fairly reflects the only purported analysis of evidence provided by Plaintiffs in the Teixeira declaration, DKT#17, ¶18. She states:

> I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Products were offered for sale, other features commonly associated with e-commerce

5

stores selling Counterfeit Products, and because Defendants and their e-commerce stores do not conduct business with Spin Master and do not have the right or authority to use the RUBIK'S Trademarks for any reason.

Plaintiffs thus asked the Court to find that the defendants, including Defendant Stores, are *counterfeiters*, a serious claim that carries substantial potential statutory damages, and are therefore entitled to the "extraordinary and drastic remedy" of a preliminary injunction, based solely on claimed analysis, determinations, and conclusions made by some unknown actor[1].

It surely cannot be a "clear showing", which "carries the burden of persuasion" upon which a court may freeze substantial amounts of money *ex parte* for a plaintiff to simply aver that the declarant, or perhaps someone else, looked at the products and made the determination of counterfeiting on behalf of the court.

Besides failing to provide the court any of the analyses, determinations, or conclusions she claims to have relied upon, Ms. Teixera's declaration is full of the ordinary boilerplate "'highly generic' allegations that 'apply equally to individuals and entities engaging in activities that are not the subject of this suit" *See Viking Arm AS v. P'ships & Unincorporated Associations Identified on Schedule A*, No. 24 C 1566, 2024 WL 2953105, at

---

[1] It strains credibility that Ms. Teixeira doesn't know if she is the one who reviewed the screenshots or not, so it may be reasonably inferred that she did not.

6

\*3 (N.D. Ill. June 6, 2024), many of which are on "information and belief". But none of the factual testimony in her declaration even comes close to the analysis she claims someone did.

This tactic is "how things are done" in Schedule A cases (the "I, or someone working under my direction…" is boilerplate in virtually all Schedule A cases) but should be viewed with greater skepticism by the judges in this district. Indeed, "'this is how things have been done' is not a justification for doing them that way". *Doe v. Trustees of Indiana University*, 101 F.4th 485, 492 (7th Cir. 2024).

As Judge Seeger recently noted:

[S]o-called "Schedule A" cases have become something of a cottage industry in this judicial district. The plaintiffs' bar files hundreds of Schedule A cases here each year, alleging that thousands upon thousands of foreign sellers are selling fake goods on various websites. In case after case, over and over again, the plaintiffs' bar asks courts in this district to enjoin online counterfeit sales. After the entry of injunctions, new sellers inevitably pop up - the judicial equivalent of Whac-A-Mole, or maybe a hamster wheel - and plaintiffs then respond by filing new cases. At that point, the whole thing starts all over again, from square one. It has become the Northern District of Illinois vs. The Internet.

The volume of cases is so great that the filings have an almost rote feel to them. The exercise has a cut-and-paste flavor. All too often, plaintiffs' counsel simply take old filings from an earlier case, swap out the names, do a little tinkering, and then file them again on behalf of some other client (or maybe the same client, for repeat players).

*Brabus GmbH v. Individuals, Corps., Ltd.*, No. 20-cv-03720, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022).

Moreover, in this and other Schedule A cases, "the court must review hundreds, and sometimes thousands, of pages of screenshots and compare them with plaintiff's intellectual property-all within an *ex parte* context. Since evidence presented *ex parte* is by its very nature one-sided, "the law demands close scrutiny of such affidavits [and evidence], particularly in those instances wherein the affiant is not a disinterested party." *Bailie v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 cv 2150, 2024 WL 2209698, at *5 (N.D. Ill. May 15, 2024).

In that case, Judge Gottschall considered, *sua sponte*, the propriety of joinder in Schedule A cases. But that is not the only problem with the way evidence is presented in Schedule A cases. As Ms. Teixeira's declaration exemplifies, Schedule A cases simply elide over the substance of the complaint: that the defendants have infringed the plaintiff's trademark. No actual analysis is ever offered on that point, just screenshots and conclusory "determinations" by unknown persons. Having failed to even attempt to explain, argue or persuade the Court that Defendant Stores are actually infringing their marks, the Preliminary Injunction should be dissolved.

Besides the failure to offer this Court any argument or analysis of infringement or counterfeiting, there are serious doubts as to the propriety of the trademarks Plaintiffs rely on.

8

B. **Plaintiff's Trademarks are functional, generic, merely descriptive, or abandoned.**

a. **The '094 trademark is functional, at least in part.**

The Rubik's Cube, was introduced in the United States in 1980 by Ideal Toy Company ("***Ideal***"). Ideal was granted exclusive rights to make and sell the Rubik's Cube in the United States by Ernö Rubik—the Hungarian inventor responsible for designing the Rubik's Cube. In March of 1982, Ideal applied to register the 3x3 Cube Design as a trademark on the Principal Register of the USPTO, an application that eventually became the '094 registration. In a significant addendum to its initial application, Ideal specified the scope of its requested trademark by confirming that competitors would be free to develop alternative puzzle cubes "formed of any color plastic material" besides black and that the "color patches need not be square . . . nor need they be colored . . . [a]nd, if colored, they need not be the precise colors used" for the Rubik's Cube. *See Rubik's Brand v. Flambeau, Inc.*, No. 17-CV-6559 (PGG) (KHP), 2021 WL 363704, at *2 (S.D.N.Y. Jan. 31, 2021).

Defendant Stores do not dispute the '094 Registration as to "a design consisting of a black puzzle cube having nine square-shaped color patches on each of its six faces, with the color patches on each face being the same when the puzzle is in the start (or solved) position, and consisting of the colors red, white, blue, green, yellow and orange (the "3x3 Cube Design"). *Flambeau, Inc.*, 2021 WL 363704, at *1 (S.D.N.Y. Jan. 31, 2021).

9

But there is of course, no protection for the 3x3 array of cubes, or any other dimensional array of cubes. The patent, patent No. 4,378,116, for a "spatial logical toy", consists of an array of cubes. Since the patent has passed into the public domain and where an "expired patent claimed the features in question, one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device", *Traffix Devices v. Marketing Displays*, 532 U.S. 23, 30 (2001), there is no protection under trademark law for the 3x3 array of cubes featured in the '094 Registration.

The Court should disregard this trademark except as to the choice of colors.

### b. Registration No. 1,242,974 for RUBIK'S CUBE is generic

"Rubik's Cube" is the name of the invention of Ernö Rubik—the Hungarian inventor responsible for designing the Rubik's Cube. Despite the '974 Registration, "Rubik's Cube" cannot function as a trademark. There is simply no other name for the invention.

A court "can consider several factors when determining whether a mark is generic, including competitors' use, plaintiff's use, dictionary definitions, media usage, testimony of persons in the trade, and consumer surveys." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:13 (4th ed. 2006). *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 794 (N.D. Ill. 2007). As that court further noted, "the Seventh Circuit has

declared terms generic based on little more than a term's common meaning in a standard dictionary".

Moreover, "even if a generic term has developed a secondary meaning, it is unprotectable as a trademark. The Second Circuit referred in this respect to the "common mistake of failing to distinguish between 'merely descriptive' terms which can be rescued as trademarks by [proof of secondary meaning] and generic terms which cannot be." *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1141 (7th Cir. 1984).

The genericness of "Rubik's Cube" is demonstrated by the dictionary definitions, encyclopedia entries, academic papers, and Plaintiff's own website and publications, attached hereto as **Exhibit A**.

There being no other name for a Rubik's Cube except for "Rubic's Cube", the '974 Registration for "RUBIK's CUBE for "Puzzle Games" is generic and it is within this Court's power to cancel the registration or disregard it in deciding this motion.

### c. Plaintiff's likely cannot demonstrate the required bona fide intention to use RUBIK'S ("'371") in commerce.

It is a quirk in trademark law that there is a method of obtaining and perpetuating a registration without ever using the mark in commerce. This is achieved through claiming foreign priority under Section 44(e) of the Lanham Act (15 U.S.C. § 1126(e)). If an applicant has a valid registration of their mark in a foreign country, they can apply for a U.S. trademark registration based on that

11

foreign registration without having to demonstrate actual use of the mark in U.S. commerce.

However, applicants must "state the applicant's bona fide intention to use the mark in commerce, but use in commerce shall not be required prior to registration."15 U.S.C.S. § 1126. The circumstances of the registration of the '374 Registration demonstrate a lack of bona fide intent to use RUBIK'S for the goods and services listed in the registration.

"In determining whether an applicant under § 44(e) has the requisite bona fide intent to use the mark in U.S. commerce, the Board [i.e. the Trademark Trial and Appeal Board of TTAB] uses the same objective, good-faith analysis that it uses in determining whether an applicant under § 1(b) has the required bona fide intent to use the mark in U.S. commerce". Additionally, "[i]n determining the sufficiency of documentary evidence demonstrating bona fide intent, the Board has held that the Trademark Act does not expressly impose "any specific requirement as to the contemporaneousness of an applicant's documentary evidence corroborating its claim of bona fide intention. Rather, the focus is on the entirety of the circumstances, as revealed by the evidence of record." *Honda Motor Co. v. Winkelmann*, 90 U.S.P.Q.2D (BNA) 1660, 1660 (Trademark Trial & App. Bd. April 8, 2009).

The '371 Registration was filed by Plaintiff's predecessor, on May 15, 2019 with the requisite averment that there was a bona fide intent to use the mark in commerce. The application was based on two foreign registrations, both European

12

Union, 015292311, registered on Aug. 03, 2016, and 009408261, registered on Feb. 18, 2011.

The Federal Circuit has held that "[w]hether an applicant had a 'bona fide intent' to use the mark in commerce at the time of the application requires objective evidence of intent… Although the evidentiary bar is not high, the circumstances must indicate that the applicant's intent to use the mark was firm and not merely intent to reserve a right in the mark…The Board [i.e. the TTAB] may make such determinations on a case-by-case basis considering the totality of the circumstances." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1375-76 (Fed. Cir. 2015). Moreover, there are "objective circumstances which, if proven, 'may cast doubt on the bona fide nature of the intent or even disprove it entirely.'" *Advertising to Women, Inc. v. Gianni Versace S.p.A.*, Case No. 98 C 1553, 2000 WL 1230461, at *4 (N.D. Ill. Aug. 24, 2000) (internal citations omitted)

In the more than 13 years since its initial registration in Europe, and in the five years since its USPTO application, there is no evidence that Plaintiff's or its predecessors have ever had an intent to use RUBIK's on any of the goods and services listed on the '371 registration. The website incorporated by reference in the Complaint, Rubiks.com, shows sales of only various puzzles under any variation of "Rubik". **Exhibit B** shows all of the products sold by Plaintiffs in the United States. On the page The Official Rubik's Cube | Distributors (rubiks.com), Rubiks.com/distributors, one can go to the websites of Plaintiffs' international distributors. None of them sell anything but puzzles under any variation of "Rubik".

13

The '371 registration is for a bizarre laundry list of products, including, for example, mouthwash, ashtrays, crockery and fire extinguishers, none of which Plaintiffs can demonstrate any sales of in the many years they (and their predecessor) have had since their European registrations. A reasonable inference may be drawn that Plaintiffs' merely want to reserve the name "Rubik's" or prevent others from using it, rather than any bona fide intent use. It is also reasonable to infer that Plaintiff will not be able to produce evidence which might support their claim, such as business plans, marketing materials, or steps taken to develop and market the goods or services under the '371 mark in the United States.

Of course, even if Plaintiffs have a bona fide intent to use the '371 mark on the wide variety of goods and services listed, Plaintiffs have not shown that the Defendant Stores' products are related to any of those goods and services.

## II. Plaintiff Will Not Suffer Irreparable Harm in the Absence of Preliminary Relief

"The finding of irreparable harm to the plaintiff if the injunction is denied is a threshold requirement for granting a preliminary injunction." *Foodcomm Intern. v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). Furthermore "granting of a preliminary injunction depends on proof of irreparable harm if the injunction is withheld..." *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1172 (7th Cir. 1997). The Seventh Circuit has found that "loss of goodwill and reputation, if *proven*, can constitute irreparable harm." *Life Spine Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (emphasis added). A plaintiff seeking injunctive relief must *actually prove*

14

that it will suffer irreparable harm; it is not presumed. *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012) (emphasis added).

Plaintiff makes allegations that Defendants are selling "low-quality" and "inferior" and "counterfeit" products Teixera Decl, ¶31. Plaintiffs do not provide any evidence to support these conclusions. Plaintiffs failed to provide any evidence that the quality of Defendant Stores' goods are substandard, or that any consumers have been tricked into believing they are purchasing products offered by Plaintiffs, or that any brand confidence or reputation has actually been harmed. Plaintiffs have made no effort in *proving* irreparable harm, and the preliminary injunction was not warranted.

### III. The Balance of Equities Favors Defendants

With their assets frozen the owners of the Defendants are not able to run their businesses. In the case *In re Aimster Copyright Litigation*, the Seventh Circuit held that looking at the balance of hardships "requires us to engage in a 'sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position.'" 252 F. Supp. 2d 634 (N.D. Ill. 2002) (quoting *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). Since Plaintiffs' failed to prove they are likely to succeed on the merits, this factor favors Defendant Stores.

### CONCLUSION

Defendants respectfully request that the Preliminary Injunction be dissolved for Defendant Stores.

15

Dated: August 20, 2024                                    Respectfully submitted,

        Defendant stores #4 Cao County Mingrui Handicraft Factory, #5 Changzhou Mermei Industry Co., Ltd., #8 Chengdu Andrey Trade Co., Ltd., #14 Dongguan Huan Lin Magnetic Industry Co., Ltd., #20 Guangzhou Huaya Biotechnology Co., Ltd., #43 Sichuan Lantu Culture Technology Co., Ltd., #45 Top Ace Development Limited, #46 Wenzhou Lvyuan Arts and Crafts Co., Ltd.

Dated: August 20, 2024

        /s/ Wesley E. Johnson
        Wesley E. Johnson
        Goodman Tovrov Hardy & Johnson LLC
        105 W Madison, Ste. 2300
        Chicago, IL 60602
        Telephone No.: (312) 752-4828
        wjohnson@goodtov.com

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on August 20, 2024, I served a copy of the attached **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISSOLVE PRELIMINARY INJUNCTION**, on all parties who have appeared via ECF.


By:/s/ Wesley Johnson